**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| TED BAXTER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 09-CV-3818 |
| v. ) | |
| ) | Judge Robert M. Dow, Jr. |
| SUN LIFE ASSURANCE COMPANY ) | |
| OF CANADA, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

For the reasons set forth below, Plaintiff Ted Baxter's motion to compel the deposition of Robert Goodall [15] is granted.

**I.    Background**

On April 21, 2005, Plaintiff Ted Baxter, then a global controller at Citadel Investment Group, LLC ("Citadel"), became disabled due to permanent brain damage following an improperly treated cerebrovascular accident (a stroke). At the time that Plaintiff became disabled, he was insured under a group long term disability ("LTD") insurance policy provided by his employer and insured and underwritten by Defendant Sun Life Assurance Company of Canada. The policy promises to pay benefits based on an employee's past earnings minus any applicable offsets, so long as an employee remains disabled under the terms of the policy. The parties do not dispute that Plaintiff is permanently and totally disabled under the terms of the policy, and that Defendant continuously has paid LTD benefits to Plaintiff since the end of the policy's elimination period. Benefits were initially paid at a net monthly amount of $15,000.

On December 4, 2005, Plaintiff was awarded Social Security Disability Income Benefits ("SSDIB"), which dated back to April 21, 2005. Defendant subsequently offset Plaintiff's

monthly LTD benefit amount by the amount of his SSDIB, which was $2,049, reducing Defendant's monthly payout to $12,951. Then, in November 2006, Plaintiff brought suit against Evanston Hospital for medical malpractice relating to the treatment Plaintiff received for the stroke he suffered. In March 2007, Plaintiff and Evanston Hospital settled for approximately $19,000,000. The settlement agreement stated the gross amount of settlement in relation to Plaintiff's bodily injury and did not enumerate a payment for loss of wages. In a letter dated April 18, 2008, Defendant notified Plaintiff that the medical malpractice settlement would offset his monthly LTD benefit amount pursuant to the policy's definition of "Other Income Benefits" – specifically, the provision which allows an offset against monthly benefits payable for "any amount you receive due to income replacement or lost wages paid to you by compromise, settlement, or other method as a result of a claim for any Other Income Benefit." Prorating the gross settlement amount from the onset date of disability through the claim expiry on November 17, 2028, Defendant reduced Plaintiff's net monthly LTD benefit amount to $1,500. Defendant also claimed that Plaintiff had received an overpayment in the amount of $375,480.

Plaintiff timely appealed, challenging Defendant's offset determination and seeking reinstatement of benefit payments at the full amount of $12,951, but the appeal was unsuccessful. On June 23, 2009, Plaintiff filed the instant suit, and on January 15, 2010, Plaintiff sought to depose Robert Goodall, a Sun Life claims consultant, "in order to better understand the application of the Policy's definition of 'Other Income Benefits' and to determine the consistency of the application of that provision." Mot. to Compel at 3. On February 1, 2010, Defendant declined Plaintiff's request, asserting that discovery is not appropriate in this ERISA case because of the deferential standard of review that Defendant contends the Court must apply in reviewing.

**II. Analysis**

Plaintiff's claim is governed by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq.*, which was "enacted to promote the interests of employees and their beneficiaries in employee benefit plans, and to protect contractually defined benefits." *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 829 (2003) (quoting *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 113 (1989)). The statute permits a person who is denied benefits under an ERISA employee benefit plan to challenge that denial in federal court. *Glenn*, 128 S. Ct. at 2346; see also 29 U.S.C. § 1132(a)(1)(B). "When reviewing a plan administrator's decision in the ERISA context, the district court has significant discretion to allow or disallow discovery requests." *Semien*, 436 F.3d at 814. Plaintiff seeks discovery outside of the administrative record into a structural conflict of interest that Defendant has as both the plan administrator (and therefore the decision maker as to whether an employee is eligible for benefits) and the payor of Plaintiff's benefits.

The scope of permissible discovery in these cases is affected by the standard of review that the Court applies to the benefits decision. "When review is deferential – when the plan's decision must be sustained unless arbitrary and capricious – *then* review is limited to the administrative record." *Krolnik v. Prudential Ins. Co. of Am.*, 570 F.3d 841, 843 (7th Cir. 2009) (citing *Perlman v. Swiss Bank Corp. Comprehensive Disability Prot. Plan*, 195 F.3d 975 (7th Cir. 1999)); see also *Glenn*, 128 S. Ct. at 2348. In this case, the parties disagree as to the applicable standard of review – Plaintiff claims that the Court should conduct a *de novo* review, while Defendant maintains that the arbitrary and capricious standard applies. Plaintiff also contends that should the Court determine that the arbitrary and capricious standard of review applies, the Supreme Court's decision in *Metropolitan Life Ins. Co. v. Glenn*, 128 S. Ct. 2343,

2346 (2008), implicitly permits limited discovery in order for the Court to properly weigh the structural conflict as a factor in its review of Defendant's decision. Defendant counters that *Glenn* did not change the established Seventh Circuit law in *Semien v. Life Ins. Co. of N. Am.*, 436 F.3d 805, 814 (7th Cir. 2006), regarding the proper scope of discovery in cases in which a court applies the arbitrary and capricious standard and that Plaintiff has not met his burden under the two-prong test established in *Semien*.

     **A.    Standard of Review**

Generally, "[t]he standard of review of a Plan Administrator's decisions regarding benefits depends on whether the Plan Administrator was given the discretion to make those decisions." *Vallone v. CNA Fin. Corp.*, 375 F.3d 623, 629 (7th Cir. 2004). The Supreme Court has held that "a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). While the Seventh Circuit has held that "there are no 'magic words' determining the scope of judicial review" in ERISA cases, the court has provided specific guidance to lower courts. *Herzberger v. Standard Ins. Co.*, 205 F.3d 327, 331 (7th Cir. 2000). In *Herzberger*, the court focused on whether the plan document explicitly states, or at least "implies," the "scope of judicial review of [the administrator's] determination." *Id.* at 332. In other words, *Herzberger* held that the critical question is notice: "participants must be able to tell from the plan's language whether the plan is one that reserves discretion for the administrator." See also *Diaz v. Prudential Ins. Co. of America*, 424 F.3d 635, 637 (7th Cir. 2005). The court drafted the following "safe harbor" language for inclusion in ERISA plans: "Benefits under this plan will be paid only if the plan administrator decides in his discretion that

the applicant is entitled to them." *Herzberger*, 205 F.3d at 331. The court stopped short of making this "safe harbor" language mandatory, stating that in some cases, the nature of the benefits or the conditions upon it will make reasonably clear that the plan administrator is to exercise discretion. Rather, the focus is on whether the plan "contain[s] language that * * * indicates with the *requisite if minimum clarity* that a discretionary determination is envisaged." *Id.* (emphasis added). If such notice is clear from the plan language, the appropriate review is the more deferential "arbitrary and capricious" standard. *Black v. Long Term Disability Ins.*, 582 F.3d 738, 744 (7th Cir. 2009).

> In the section entitled "Insurer's Authority," the policy states:
>
> The Plan Administrator has delegated to Sun Life its right to make all final determinations regarding claims for benefits under the benefit plan insured by this policy. This right includes, but is not limited to, the determination of eligibility for benefits, based upon enrollment information provided by the Policyholder, and the amount of any benefits due, and to construe the terms of this Policy.
>
> Any decision made by Sun Life in the exercise of this right, including review of denials of benefit, is conclusive and binding on all parties. Any court reviewing Sun Life's determinations shall uphold such determination unless the claimant proves Sun Life's determinations are arbitrary and capricious.

While the policy does not contain the explicit safe harbor language espoused by the Seventh Circuit, the plan explicitly "stipulate[s] for deferential review." *Herzberger*, 205 F.3d at 332. The plan expressly states that any decisions made by Sun Life are "conclusive and binding," and that any judicial review will be subject to the "arbitrary and capricious" standard. In a sense, a stipulation regarding the governing review standard seems more lucid than merely stating that a decision is discretionary, as many participants may not understand how "discretion" would impact a subsequent lawsuit. While it does not employ the "safe harbor" language, the policy at issue here tells participants exactly what to expect upon judicial review, and thus alerts participants to the uphill battle that they face should they disagree with the insurer's decision.

5

See also *Exbom v. Central States Health and Welfare Fun*, 900 F.2d 1138, 1141 (7th Cir. 1990) (holding that arbitrary and capricious standard of review was appropriate when plan that stated that trustees had the power to construe the plan's terms and that their construction of the plan and determination of any controversies would be "binding"); *Gerlib v. R.R. Donnelley & Sons Co.*, 2001 WL 1313794, at *6-7 (N.D. Ill. Oct. 26, 2001) (finding that use of the term "binding" clearly advised participants that the plan administrator's decision was the final word). The language included in the present policy – indicating that Sun Life's decisions are "conclusive and binding" and that judicial review will be subject to an "arbitrary and capricious" standard – gives the employee adequate notice that the plan administrator has discretionary authority to determine eligibility for benefits or to construe the terms of the plan. Therefore, at the appropriate time, the Court will apply the arbitrary and capricious standard to its review of Sun Life's benefits determination.

**B. Discovery**

When the plan administrator possesses discretionary authority and the district court reviews the decision under the deferential arbitrary and capricious standard, the Seventh Circuit has articulated a reluctance to grant extensive discovery:

> [W]hen there can be no doubt that the application was given a genuine evaluation, judicial review is limited to the evidence that was submitted in support of the application for benefits, and the mental processes of the plan's administrator are not legitimate grounds of inquiry any more than they would be if the decisionmaker were an administrative agency.

*Perlman*, 195 F.3d at 982. However, in *Semien*, the Seventh Circuit reasoned that, on occasion, limited discovery beyond the administrative record is "appropriate to ensure that plan administrators have not acted arbitrarily and that conflicts of interest have not contributed to an unjustifiable denial of benefits." 436 F.3d at 814. The Seventh Circuit then established two

factors that a plaintiff must address satisfactorily before such limited discovery becomes appropriate: (1) the identification of "a specific conflict of interest or instance of misconduct" and (2) making "a prima facie showing that there is good cause to believe limited discovery will reveal a procedural defect in the plan administrator's determination." *Id*. at 815 (citing *Bennett v. Unum Life Ins. Co. of Am.*, 321 F. Supp. 2d 925, 932-33 (E.D. Tenn. 2004)).

This limit on discovery, considered established law in the Seventh Circuit, has come into question since the Supreme Court in *Glenn* held that a structural conflict of interest exists when a plan administrator "both determines whether an employee is eligible for benefits and pays benefits out of its own pocket." *Glenn*, 128 S.Ct. at 2346. The Court reaffirmed that a deferential standard of review is appropriate when the plan administrator is granted discretionary authority to determine eligibility for benefits and that if that plan administrator "is operating under a conflict of interest, that conflict must be weighed as a 'factor in determining whether there is an abuse of discretion.'" *Id*. at 2348, 2350 (quoting *Firestone Tire*, 489 U.S. at 115). The Supreme Court explained that "any one factor will act as a tiebreaker when the other factors are closely balanced, the degree of closeness necessary depending upon the tiebreaking factor's inherent or case-specific importance." *Id*. at 2351.

Under the facts in *Glenn*, the Supreme Court explained that

> the conflict of interest at issue here * * * should prove more important (perhaps of great importance) where circumstances suggest a higher likelihood that it affected the benefits decision, including, but not limited to, cases where an insurance company administrator has a history of biased claims administration. It should prove less important (perhaps to the vanishing point) where the administrator has taken active steps to reduce potential bias and to promote accuracy, for example, by walling off claims administrators from those interested in firm finances, or by imposing management checks that penalize inaccurate decisionmaking irrespective of whom the inaccuracy benefits.

7

*Id*. Although *Glenn* does not discuss the standard for discovery in such cases, the Court cautioned against the creation of "special burden-of-proof rules, or other special procedural or evidentiary rules, focused narrowly upon the evaluator/payor conflict," explaining that conflicts are only one factor of many. *Id*.

Although Defendant skirts the issue of whether a conflict of interest actually exists pursuant to *Glenn,* the fact that Sun Life, as plan administrator, both made the benefit determination and paid benefits, indicates that a structural conflict exists. District courts in the Seventh Circuit, and throughout the country, have come to different conclusions regarding whether conflict discovery is permissible in the wake of *Glenn*.[2] In this district, shortly after the *Glenn* decision, at least one court held that *Glenn* did not overrule *Semien* and applied the two-part test for discovery. See *Marszalek v. Marszalek & Marszalek Plan*, 2008 WL 4006765, at *2 (N.D. Ill. Aug. 26, 2008). Another court in this district more recently applied the two-part test in granting a plaintiff's motion to compel discovery regarding whether the administrator acted under a conflict of interest in making its benefits determination on the basis that the

---

[2] Outside the Seventh Circuit, a number of courts have rejected efforts to take discovery in the months following *Glenn*. See, *e.g.*, *Johnson v. Connecticut Gen. Life Ins. Co.*, 324 Fed. App'x 459 (6th Cir. 2009)*; Singleton v. Hartford Life & Accident Ins. Co.*, 2008 WL 3978680, at * 1 (E.D. Ark. July 29, 2008); *Dubois v. Unum Life Ins. Co. of Am.*, No. Civ. 08-163-P-S, 2008 WL 2783283, at *2-3 (D. Me. 2008); *Eppler v. Hartford Life and Acc. Ins. Co.*, No. C 07-04696, 2008 WL 3266469, at * 8 (N.D. Cal. Aug. 7, 2008); *Weeks v. Unum Group*, No. 2:07-CV-577, 2008 WL 4329223, at * 1 n. 1 (D. Utah Sep. 15, 2008); *Samuel v. Citibank, N.A., Long Term Disability Plan*, No. Civ. 07-4051, 2008 WL 4138174, at * 1 (D. S.D. Sep. 3, 2008); *Christie v. MBNA Group Long Term Disability Plan*, Civ. No. 1:08-cv-44, 2008 WL 4427192, at * 2 (D. Me. Sep. 25, 2008). In contrast, ample case law allows discovery into a conflict of interest following *Glenn*. See, *e.g.*, *Denmark v. Liberty Life Assur. Co. of Boston*, 566 F.3d 1 (1st Cir. 2009); *Emery v. Am. Airlines, Inc.*, No. 08-22590-CIV, 2010 WL 457151, at * 3 (S.D. Fla. Feb. 4, 2010); *Sullivan v. Deutsche Bank Americas Holding Corp.*, Civil No. 08CV2370, 2010 WL 391821, at * 1 (S.D. Cal. Feb. 2, 2010); *Thornton v. W. and S. Life Ins. Co.*, No. 3:08-CV-648, 2010 WL 411119, at * 2 (W.D. Ky. Jan. 28, 2010); *Sampson v. Prudential Ins. Co. of Am.*, No. 08-1290, 2009 WL 882407, at * 2 (E.D. Mo. Mar. 26, 2009); *Hackett v. Standard Ins. Co.*, No. Civ. 06-5040, 2009 WL 3062996, at * 6 (D. S.D. Sep. 21, 2009); *Sanders v. Unum Life Ins. Co. of N. Am.*, No. 4:08-CV-421, 2008 WL 4493043, at * 4 (E.D. Ark. Oct. 2, 2008).

congressional purposes of inexpensive and expeditious claims decisions require the continued application of *Semien*. See *Garvey v. Piper Rudnick LLP Long Term Disability Ins. Plan*, 264 F.R.D. 394, 399-400 (N.D. Ill. 2009), vacated on other grounds, 2009 WL 3260010 (N.D. Ill. Dec. 8, 2009).

However, courts in the Southern District of Indiana have almost unanimously concluded that *Glenn* abrogated the requirement in *Semien* that a claimant make an exceptional showing before obtaining discovery. See *Barker v. Life Ins. Co. of N. Am.*, 265 F.R.D. 389, 394 (S.D. Ind. 2009) (citing cases). In *Gessling v. Group Long Term Disability Plan for Employees of Sprint/United Management Co.*, the court found that prior cases such as *Semien* that "made discovery in such cases nearly impossible to obtain" had been superceded by *Glenn* and that discovery outside the administrative record is permissible, although the court limited the additional discovery to the issue of bias. 2008 WL 5070434, at *1 (S.D. Ind. Nov. 26, 2008) (citing *Hogan-Cross v. Metro. Life Ins. Co.*, 568 F. Supp. 2d 410, 414-16 (S.D.N.Y. 2008); *Winterbauer v. Life Ins. Co. of N. Am.*, 2008 WL 4643942, at *4-6 (E.D. Mo. Oct. 20, 2008)).

Adopting *Gessling*'s skepticism that *Semien* remains vital in light of *Glenn*, yet acknowledging the lingering admonition in *Semien* that discovery should remain limited even in the presence of a conflict, another court in the Southern District allowed discovery into the conflict of interest such as discovery of underwriting materials, plan procedures, training, the relationship between the administrator and third-party reviewers, compensation structures, approval/denial statistics, and steps taken to ensure accuracy. See *Fischer v. Life Ins. Co. of N. Am.*, 2009 WL 734705, at * 3 (S.D. Ind. Mar. 19, 2009) (citing *Semien*, 436 F.3d at 814-15); see also *Barker,* 265 F.R.D. at 394 (finding that *Glenn* contemplates the production of evidence relevant to the claim administrator's alleged conflicts in making disability determinations but

9

assessing each request for relevancy); *Anderson v. Hartford Life and Accident Ins. Co.*, 2009 WL 3733343, at * 1 (S.D. Ind. Oct. 30, 2009) (finding that conflict-of-interest discovery should be the rule rather than the exception in ERISA cases); *Hughes v. CUNA Mut. Group*, 257 F.R.D. 176, 179 (S.D. Ind. 2009) (agreeing that the test in *Semien* is incompatible with *Glenn*'s rejection of "special procedural * * * rules"); *Reimann v. Anthem Ins. Cos., Inc.*, 2008 WL 4810543, at * 23 (S.D. Ind. Oct. 31, 2008) (finding that, under *Semien* and in light of *Glenn*, plaintiff must have an opportunity to supplement the record and, "presumably, to conduct at least some targeted discovery"); but see *Creasey v. Cigna Life Ins. Co. of New York*, 2008 WL 4810539, at *1 (S.D. Ind. Oct. 31, 2008), reaffirmed in *Creasey v. Cigna Life Ins. Co. of New York*, 2009 WL 55226, at *1 (S.D. Ind. Jan. 6, 2009) (declining to follow *Semien* but finding that the question of whether further discovery is required in cases with a structural conflict of interest should only be decided after the dispositive motion is fully briefed).

At a minimum, the Supreme Court's ruling in *Glenn* makes evidence related to a conflict of interest at least relevant to the review of the denial of benefits. The majority of the other courts agreeing with that approach have stressed *Glenn*'s rejection of "special procedural * * * rules" when there is a conflict of interest and found this pronouncement incompatible with the "high bar" set in *Semien* for obtaining discovery. See *Hall v. Life Ins. Co. of North America*, 265 F.R.D. 356, 363-64 (N.D. Ind. 2010). This Court finds *Glenn*'s pronouncement that "any one factor will act as a tiebreaker when the other factors are closely balanced, the degree of closeness necessary depending upon the tiebreaking factor's inherent or case-specific importance" even more revealing. It would be difficult for the parties to test (or the court to measure) the impact or weight of the conflict of interest – or its "case-specific importance" – as contemplated by the

Supreme Court in *Glenn*, based solely on the administrative record without the benefit of discovery in appropriate cases.

Although the Seventh Circuit has not yet addressed this discovery issue, in discussing how to apply the conflict-of-interest factor under *Glenn* to determine the "gravity of the conflict," the court of appeals has commented that "the terms of employment of the staff that decides benefits claims might * * * affect a determination of how likely it is that those employees would slant their decisions in favor of their employer's short-term interest in minimizing his benefits expense" but found no indication that the plan administrator had acted under a conflict of interest. *Marrs v. Motorola, Inc.*, 577 F.3d 783, 789 (7th Cir. 2009). If the "terms of employment of the staff that decides the claims" could affect the court's determination, those "terms of employment" are relevant and, if not contained within the administrative record, should be discoverable. How else could a court both properly consider the existence of a conflict and assess its "gravity," as the Seventh Circuit has suggested the court must do? See *id*. In short, for the Supreme Court's decision in *Glenn* to be meaningful, the conflict either must be an automatic strike against the insurer – which no court has found – or the parties must be allowed to explore, in at least a limited fashion, whether the conflict actually motivated the plan administrator's decision. See *Glenn*, 128 S.Ct. at 2351 (courts should accord weight to a conflict in varying amounts depending on case-specific factors).

For these reasons, the Court concludes that Plaintiff is permitted to conduct limited discovery into the conflict of interest on the part of Sun Life under Rule 26(b). However, cognizant that the Seventh Circuit disfavors extensive discovery based on the discretion afforded plan administrators and ERISA's goals of inexpensive and expeditious resolution of benefits disputes, see *Semien*, 436 F.3d at 815, the Court limits this discovery to the deposition of Robert

Goodall, which is to be tailored solely to the issue of the structural conflict of interest and its effect, if any, on the denial of benefits to Mr. Baxter. Limiting discovery in that fashion ensures that the competing concerns at issue – inexpensive and expeditious resolution of ERISA claims and the discovery of relevant information – are both accommodated.

**III.     Conclusion**

For the reasons stated above, the Court grants Plaintiff's motion to compel the deposition of Robert Goodall [15].

Dated: May 20, 2010                          _____
                                             Robert M. Dow, Jr.
                                             United States District Judge